UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

DARLENE D. RYAN          :      DOCKET NO. 2:12-cv-748

VS.                :      JUDGE MINALDI

U.S. COMMISSIONER OF SOCIAL   :      MAGISTRATE JUDGE KAY
SECURITY

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of Social Security Disability Insurance Benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court finds that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

## I.
## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits alleging disability beginning on November 18, 2009. Tr. 127-30. The claim was initially denied on September 2, 2010. Tr. 62-65. On April 22, 2011, following an administrative hearing held April 5, 2011, the Administrative Law Judge (ALJ) issued an unfavorable decision. Tr. 9-21. In this decision, the ALJ found plaintiff's impairments of bilateral carpal tunnel syndrome and disorders of the knee and back were severe but he found she retained the residual functional capacity ("RFC") to perform light work with certain restrictions. Relying on the testimony of a vocational expert

("VE") the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  Thus, the ALJ determined that plaintiff was not disabled. *Id.*

Plaintiff filed a request for appellate review of this decision and on January 27, 2012 her request was denied.  Tr. 1-4.  On March 27, 2012 plaintiff filed suit in this court appealing the determinations of the Commissioner.  Doc. 1.

## II.
## FACTS AND MEDICAL EVIDENCE

### A.  Facts

Plaintiff, age 44 at the time of the hearing, is a high school graduate.  Tr. 29.  She testified that she was last employed as a card dealer at the Isle of Capri Casino in Lake Charles, Louisiana.  Tr. 30.  She worked at that job for approximately nine years.  Tr. 37, 146.  She contends that dealing cards for such a long period of time caused bilateral carpel tunnel syndrome.  Tr. 30.  She stopped working on November 18, 2009, because of numbness and tingling in her hands.  *Id.*  She stated that she is receiving worker's compensation benefits.  Tr. 40.  Prior to her position as a dealer, plaintiff did janitorial and construction work.  Tr. 37, 146.

Plaintiff testified that she has undergone left carpel tunnel release surgery performed by Dr. Clark Gunderson.  Tr. 32.  She stated that a right carpel tunnel release surgery was scheduled for February 28, 2011, but was postponed.  According to plaintiff, she was reluctant to have the second surgery because she was still having trouble with her left hand. [1]  Tr. 32-33, 36.  Plaintiff testified that she still has numbness in both of her hands.  Tr. 34.  When she sleeps at night, she

---

[1] The ALJ questioned plaintiff about inconsistencies in her testimony and a letter written by Dr. Clark Gunderson dated March 2, 201,1wherein he wrote that in a phone conversation with plaintiff she indicated that she needed to postpone her surgery because her mother was in intensive care.  Plaintiff responded that she "mentioned" to Dr. Gunderson her problems with her left hand.  Tr.  32-33, 38-39.

-2-

stated, her hands "weigh heavy" and she has to get up and shake them.  During the day she experiences pins and needles, numbness, and a burning sensation in her hands.  Tr. 35.

Plaintiff indicated that she experiences knee pain and lower back pain but the reason she stopped working was the pain in her hands.  Tr. 35.  Her lower back pain radiates down into her legs.  Tr. 37.  She testified that she needs to lie down for thirty minutes to an hour on and off during the day and is only able to stand for thirty to forty-five minutes at a time.  Tr. 38.

Plaintiff testified that she sometimes has trouble holding a mop and her children help her clean house and wash dishes.  Tr. 36.  She sometimes has difficulty holding a brush and brushing her hair and she cooks occasionally.  Tr. 42-43.

### B.  Medical Evidence

#### 1.  Wellness Management Chiropractic and Medical Center

The medical evidence submitted shows that plaintiff was seen at the Wellness Management Chiropractic and Medical Center on August 8, 2008.  She reported that she experienced a popping sensation in her lower back while rearranging furniture at her home.  The notes indicate that she experienced severe pain.  Tr. 229.  On November 11, 2009, plaintiff complained of left knee pain, lower back pain, and bilateral wrist and hand pain.  From November 20, 2009, through May 12, 2010, records indicate that plaintiff was treated for bilateral wrist/hand pain, lower back pain, and left knee pain.  Tr. 213-27, 231-36, 265-88.

#### 2.  The Clinic

Evidence submitted from The Clinic shows an appointment on January 8, 2009 for sinus congestion, ear pain and left knee pain.  Tr. 245.  On January 30, 2009, plaintiff complained of left knee pain, hypertension and gastroesophageal reflux disease (GERD).  Tr. 244.  On December 21, 2009, plaintiff reported sinus and chest congestion, and was seen for follow up for

hypertension.  Tr. 243.  Records from February 4, 2010, indicate that plaintiff complained of persistent GERD discomfort and expressed a desire to lose weight.  Tr. 242.  On March 22, 2010, plaintiff presented for follow up of hypertension, and persistent arthritic pain in her left knee.  It was noted that her depression was "stable."  Tr. 241.

### 3.  Dr. Clark Gunderson

Plaintiff was first seen by Dr. Gunderson on December 10, 2009.  She complained of pain in her wrists, lower back and left knee.  Tr. 248-49.  Dr. Gunderson referred her to Dr. Fayez Shamieh for electromyography and nerve conduction studies.  Studies conducted on February 8, 2012, revealed evidence of bilateral carpel tunnel syndrome involving the motor and sensory fibers.  The right hand was more marked than the left.  Tr. 238-39.  On a visit to Dr. Gunderson's office on March 31, 2010, plaintiff was advised of the results of her electromyography and nerve conduction studies and Dr. Gunderson recommended left carpel tunnel release surgery.  Tr. 252.

On August 24, 2010, plaintiff presented to Dr. Gunderson for a re-evaluation.  She reported that she has tingling in both hands, her hands fall asleep at night, and she drops objects.  Dr. Gunderson again recommended left carpel tunnel release surgery.  Tr. 354.

She was next seen by Dr. Gunderson on September 21, 2010, at which time the left carpel tunnel release surgery and its associated risks were explained.  Tr. 348.  Surgery was performed on September 23, 2010, at Lake Charles Memorial Hospital.  Tr. 336-37.

Plaintiff did not appear for an appointment on September 30, 2010.  Tr. 334.  At her next appointment on October 1, 2010, she reported that she still had some numbness.  Tr. 333.  On November 2, 2010, she reported that her pain was "no better."  Tr. 328.

A report written by Dr. Gunderson dated January 6, 2011, states that he saw plaintiff on December 14, 2010, which was two and one-half months post left carpel tunnel release surgery.

Plaintiff continued to complain of pain in her left hand.  He noted that the wound was well healed and she had good grip strength with diminished sensation along the median nerve distribution.  She was referred to occupational therapy for rehabilitation.  Tr. 315.

On January 11, 2011, plaintiff reported that she had been to occupational therapy and her range of motion and grip had improved.  Dr. Gunderson noted that she should schedule her right hand carpel tunnel release surgery.  Tr. 312.  Plaintiff did not appear for an appointment on January 17, 2011.  Tr. 310.  On January 20, 2011, plaintiff reported that she wanted to schedule her right carpel tunnel release surgery and the surgery date was set for February 28, 2011.  Tr. 309.

In a letter written by Dr. Gunderson dated March 2, 2011 he states that plaintiff postponed her February 28, 2011 surgery because her mother was in intensive care.  He advised her that surgery should be scheduled in the very near future or he would release her to go back to work.  Tr. 299,

Records that were submitted to the Appeals Counsel show that on April 7, 2011,[2] plaintiff presented to Dr. Gunderson and reported that she was ready to reschedule her right carpel tunnel release surgery.  Tr. 360.  Surgery was performed on April 11, 2011.  Tr. 357, 366.

### 4.  Dr. Amanda Steen

Dr. Amanda Steen performed a consultative disability evaluation on August 14, 2010, at the request of Disability Determination Services.  Tr. 254-57.  Plaintiff reported suffering from carpal tunnel syndrome, depression, hypertension, arthritis, back pain, knee pain, and shoulder pain.  Plaintiff stated that she was diagnosed with carpal tunnel syndrome in 2009.  She stated that her left hand was worse than her right and that both hands felt stiff, numb, heavy and achy.  She stated that her hands go to sleep at night and she occasionally wears braces on her hands.  *Id.*

---

[2] The date of plaintiff's hearing was April 5, 2011.

Plaintiff stated that she was diagnosed with depression in 2007.  She stated that she is easily upset, worries people are talking about her, and worries about paying her expenses with no income.  She indicated that she has had suicidal ideation in the past.  She reported that she does not see a therapist or psychiatrist but sees a physician at Moss Regional Hospital who prescribed medications that help her mood.  *Id.*

She reported that she was diagnosed with hypertension in 2005.  She has trouble getting her medication but takes it when she has it.  She indicated that she suffers from chest pain or tightening of her chest every three to four days which will last for thirty minutes.  *Id.*

Plaintiff stated that she suffers from arthritis in her back, left knee and shoulder.  Her pain in her back originates at her tailbone and radiates up.  Her left knee stiffens and gives out.  She experiences numbness and cramping in her feet.  Her right shoulder aches with activity.  *Id.*

Plaintiff reported that she needs minimal assistance dressing herself, can feed herself, can stand for thirty minutes at one time and a total of two to three hours in an eight hour period, can walk one hundred yards on level ground, and can sit for thirty minutes.  She can lift ten pounds, can participate in household chores such as cooking, and can go up and down stairs.  She stated that she does drive.  *Id.*

On physical examination Dr. Steen found that plaintiff was in no acute distress, had no difficulty getting up and out of the chair or dressing and undressing herself.  She detected mild crepitus of her left knee with flexation and extension but no swelling or limitation in range of motion of the knees.  She was able to flex at the waist to eighty degrees, demonstrated tenderness along left SI joint with no muscle spasms.  Her gait was normal and she could walk on heels and toes with no difficulty.  Her grip was a 5/5 bilaterally.  Dr. Steen noted positive bilateral Phalen test with mild swelling of her hands, but no muscular atrophy.  Plaintiff has normal manual

dexterity and grasping ability and her range of motion in all major joints including fingers, wrists, elbows, shoulders, neck, low back, knees, and ankles is without limitation.   Her neurological examination revealed 5/5 motor strength bilaterally in all major muscle groups both upper and lower extremities except decreased strength over the right thumb.  *Id.*

Following examination, Dr. Steen's impression was carpal tunnel syndrome with positive Phalen test bilaterally with decreased sensation along the right thumb but no decreased manual dexterity or grip strength or muscular atrophy, depression, hypertension, arthritis, axial lower back pain without evidence of radiculopathy or motor weakness, left knee pain with mild crepitance but no limitation in range of motion, right shoulder pain without limitation in range of motion.  *Id.*

Dr. Steen opined that after conducting a physical examination, reviewing plaintiff's history, relevant imaging, and past medical records, plaintiff should avoid activities that require repetitive forceful gripping or twisting of the wrist.  She should try to avoid prolonged repetitive activities using her hands in general, but she is not limited in manual skills of the hands.  She should avoid the use of tools or utensils that vibrate and avoid forceful pushing or pulling.  Dr. Steen found that plaintiff did not require any assistive devices for ambulation, and found no other physical impairments or functional activity limitations.  *Id.*

### 5.  *Joseph Tramontana, Ph.D.*

Joseph Tramontana performed a state agency psychiatric review technique on August 26, 2010.  Tr. 56, 258.  He opined that plaintiff's affective disorder of depression mildly restricted her activities of daily living, social functioning, and concentration and noted no episodes of decompression.  He noted that she has mild symptoms of depression and reports that her symptoms respond well to medication.  He further noted that although she reported a history of

special education, her work as a casino dealer earning up to $42,000 a year from 2000-2009 eliminates the need to consider any severe learning problems or mental retardation.  *Id.*

### 6. *Dr. Joseph Michalik*

A state agency physical RFC assessment was reviewed by Dr. Michalik on August 27, 2010.  Tr. 57-58, 259.  He determined that plaintiff had exertional limitations of occasionally lifting twenty pounds, frequently lifting ten pounds, standing and/or walking six hours in an eight-hour-work day, sitting six hours in an eight-hour-work day.  He found no limitations on plaintiff's ability to push and pull.  Dr. Michalik indicated that plaintiff could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  She was limited to occasional climbing of ladders, ropes and scaffolds.  He found no manipulative, visual, communicative or environmental limitations.  *Id.*

### 7. *Jerry L. Whiteman, Ph.D.*

Following her hearing date, plaintiff underwent a psychological evaluation on May 25, 2011, and submitted a report to the Appeals Council as evidence.[3]  Tr. 200-205.  Plaintiff reported depression and difficulty comprehending.  Dr. Whiteman noted that she displayed independent locomotion with no significant limitations in motor functions.  She was cooperative and provided a valid assessment.  Plaintiff drove to the appointment, has a valid driver's license, maintains daily hygiene, and her posture and eye contact were appropriate.  Dr. Whiteman characterized plaintiff's mental status as adequate in all spheres.  He noted that her general fund of information and long term memory skills appear to be below average and her mathematical skills are below average.  Dr. Whiteman indicated that plaintiff's short term memory and

---

[3] Evidence submitted to the Appeals Council is considered part of the administrative record which this court reviews to determine if the Commissioner's decision is supported by substantial evidence.  *Higginbotham v. Barhnart,* 405 F.3d 332 (5th Cir.2005).

concentration skills, based upon digit span techniques, are borderline and her intermediate memory was poor.

Dr. Whiteman administered the Wechsler Adult Intelligence Scale – IV test.  Plaintiff earned a full scale IQ of 71, which according to Dr. Whiteman reflects borderline intelligence. Her verbal comprehension index was a 63 and her perceptual reasoning index was a 73.  Her working memory index was a 71 and her processing speed index was a 97.

Dr. Whiteman's diagnostic impression of plaintiff was depression, borderline intelligence, high blood pressure, and pain and mild stressors due to health problems.  He opined that her cognitive abilities were borderline and she continues to suffer depression despite prescribed medication.  *Id.*

On May 27, 2011, Dr. Whiteman completed a mental medical source statement wherein he determined that plaintiff had a slight impairment[4] in her ability to understand and remember simple instructions, ability to carry out short and simple instructions, ability to interact with the public, ability to interact with supervisors, and ability to interact with co-workers.  Tr. 204-05. He noted moderate impairments[5] in her ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to make judgments on simple work related decisions, ability to respond to work pressures, and ability to respond to changes in a routine work setting.  *Id.*

### III.
### STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557,

---

[4] A slight impairment is defined on the medical source statement as having some mild limitations in this area but the individual can generally function well.
[5] A moderate impairment is defined on the medical source statement as having moderate limitations in this area but the individual is still able to function satisfactorily.

560 (5th Cir. 1964)).  The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Greenspan*, 38 F.3d at 236).  "It is 'more than a mere scintilla and less than a preponderance.'"  *Id.*  (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's."  *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Conflicts of evidence are for the Commissioner, not the courts, to resolve."  *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## IV.
## LAW AND ANALYSIS

### A.  *Burden of Proof*

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461.  The claimant must show that he or she is unable to engage in a work

activity "involving significant physical or mental abilities for pay or profit."  *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)).  The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[6]; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520).  If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy.  *Id.*  "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding."  *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step.  *Id.* (citing 20 C.F.R. § 404.1520(a)).  On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step.  *Id.*  Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC).  *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite

---

[6] A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).  Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process.  20 C.F.R. §§ 404.1520, 404.1523.  A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled.  *Id.*

his physical and mental limitations and is based on all relevant evidence in the claimant's record."  *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)).  Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; Social Security Ruling 96-8p.  The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations.  20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p.  The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled at step five of the sequential analysis.  The ALJ found that considering plaintiff's age, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  Tr. 19-20.

### B.  Plaintiff's Claims

In her appeal plaintiff argues that substantial evidence does not support the ALJ's decision.  Specifically, she sets forth the following arguments:

(1)     The Appeal's Council failed to follow its own policies and procedures regarding the receipt of new and material evidence.

(2)     The new evidence presented by plaintiff undermines the ALJ's RFC finding.

(3)     The ALJ posited a defective step 5 hypothetical question to the vocational expert.

(4)     The VE provided defective step five testimony.

Through analysis provided below we conclude that none of these claims have merit.

**1.   Did the Appeals Council fail to follow its own policies regarding receipt of new and material evidence?**

Plaintiff argues that the Appeals Council inferentially concluded that the evidence plaintiff submitted to it on May 25, 2011 was "new and material" but nevertheless failed to evaluate the evidence.  Plaintiff cites *Parsons v. Astrue,* No. 07-0486, 2008 WL 3836569 (W.D. La. July 25, 2008), and *Malbrough v. Colvin,* No. 12-00958 2013 WL 3716609 (W.D. La. July 15, 2013) for the proposition that a case must be remanded if the Appeals Counsel fails to consider new and material evidence submitted by the claimant.  Plaintiff submits that the new evidence, a report by psychologist Jerry L. Whiteman, reveals that plaintiff's cognitive and mental impairments were more limiting than the ALJ acknowledged in his opinion.  Thus, she contends that the Appeals Council should have overturned the ALJ's decision.

In response, the Commissioner argues that the Appeals Council properly considered plaintiff's post-decision evidence and its determination to deny her request for review was correct.

The Commissioner's regulations provide that the Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of the [ALJ] hearing decision."  20 C.F.R. §§ 404.970(b), 416.1470(b).

Here, the Appeals Council clearly considered Jerry L. Whiteman's psychological evaluation dated May 25, 2011.  In its Order dated January 27, 2012, the Appeals Council listed as additional evidence the following exhibit:

> Exhibit 11E      Legal brief from Anthony Mitchell, Disability Consultant, dated January 9, 2012, *a psychological evaluation from Jerry L. Whiteman, Ph.D. dated May 25, 2011*, Memorandum Judgment from the United States District Court in the case of Erica Owens dated December 8, 2009, and a withdrawal letter from Mark Zimmerman, Esq. Dated May 16, 2011.

Tr. 4. (emphasis added). The Appeals Council stated it would review plaintiff's case if it "receive[d] new and material evidence and the decision is contrary to the weight of all the evidence now in the record." Tr. 1. It further stated that it looked at the reasons plaintiff disagreed with the Commissioner's decision and the "additional evidence listed on the enclosed Order of the Appeals Council." *Id.*

A review of the record shows that Jerry L. Whiteman's report is included in Exhibit 11E. Tr. 200-05. The Appeals Council concluded that the new evidence did not provide a basis for changing the ALJ's decision. Tr. 1-3.

In light of the above, we can say with certainty that the Appeals Council considered Jerry L. Whiteman's report. Plaintiff's argument in this regard is without merit.

### 2. Does plaintiff's post-judgment evidence undermine the ALJ's finding?

Plaintiff next contends that the psychological assessment by Jerry L. Whiteman undermines the decision made by the ALJ. She contends that the medical evidence satisfies the Social Security Administration Program Operations Manual System (POMS) DI 24515.056 medical equivalency and she should have been declared disabled at step three of the ALJ's analysis. Plaintiff maintains that her full scale IQ score of 71 combined with her impairments of bilateral carpal tunnel syndrome and disorders of the knee and back mandate an award of benefits at step three of the ALJ's analysis.

She further contends that the mental medical source statement completed by Jerry L. Whiteman imposed "markedly limited restrictions" on her capacity to perform work related activities. Plaintiff argues that this new evidence supports a reversal of the ALJ's determination of not disabled.

The Commissioner argues that the Whiteman report is not evidence of a listed or *per se* mental impairment.  The Commissioner further submits the RFC determination by the ALJ is supported by the evidence in the record.

The SSA promulgated the POMS as "publicly available operating instructions for processing Social Security claims."  *Wash. State Dep't of Soc. & Health Serv. V. Guardianship Estate of Keffeler,* 537 U.S. 371, 385 (2003).  POMS DI 24515.056 (D)(c) 12.05C provides:

> Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment. … [s]lightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function ***may support an equivalence determination***.  It should be noted that generally the higher IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found. (emphasis added).

The Supreme Court noted that "these administrative interpretations are not products of formal rulemaking."  *Id.*  While POMS can be persuasive, it "does not have the force of law."  *Stroup v. Barnhart,* 327 F.3d 1258, 1262 (11th Cir.2003).

The court notes that the above POMS does not impose a mandatory finding of medical equivalence.[7]  Instead, it uses the words "may support an equivalence determination" leaving discretion to the judicial officer.  Further, POMS is merely persuasive authority.

Here, the ALJ recognized plaintiff's severe limitations of bilateral carpal tunnel syndrome and disorders of the knee and back in his written opinion.  Tr. 14.  The only other evidence that the post-hearing Whiteman report reveals is that plaintiff has a full scale IQ of 71 and her cognitive abilities are "borderline."  Tr. 202-03.  We do not find that this undermines the

---

[7] Unlike POMS, if a claimant meets all requirements in a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ must find the claimant disabled.  20 C.F.R. § 1520(d).

ALJ's determination that plaintiff does not have an impairment or combination of impairments that meet or medically equals a listing.  This argument is without merit.

Plaintiff next argues that Dr. Whiteman's findings on the mental medical source statement he completed on May 27, 2011, undermine the findings of the ALJ.  Plaintiff contends that Dr. Whiteman imposed "markedly limited restrictions" on her capacity to perform work related activities and this evidence is uncontroverted in the record.  Doc. 10, p. 10.

A review of the mental medical source statement reveals that plaintiff assertions are misstated.  Dr. Whiteman found either "slight" or "moderate" restrictions on plaintiff's ability to perform work related activity.  Tr. 204-05.  There is no determination that plaintiff has a "marked" limitation in any area on the assessment.  *Id.*

The ALJ gave great weight to the opinion of Joseph Tramontana, the state agency psychological consultant.  His mental assessment imposed mild limitations in activities of daily living, and mild difficulties maintaining social function, concentration, and persistence.  Tr. 56, 258.  The state consultative examiner, Dr. Amanda Steen's opinion was also given significant weight.  Her opinion was that plaintiff should avoid activities that require repetitive forceful gripping or twisting of the wrist and should try to avoid prolonged repetitive activities using the hands in general.  She found that plaintiff was not limited in manual skills of the hands but should avoid using tool that vibrate.  Tr.254-57.

The evidence in the record before the ALJ was sufficient for him to determine that she was capable of performing light work with occasional fine and gross manipulation in both hands.  Tr. 15.  The report of Dr. Whiteman does not undermine this finding and reveals essentially the same limitations that existed and were documented in the record before the ALJ.  For these reasons, we find this argument without merit.

**3.  Did the ALJ pose a defective hypothetical question to the vocational expert?**

Plaintiff argues that the hypothetical question posited by the ALJ to the VE was defective because it failed to incorporate all of her limitations.  Specifically, plaintiff maintains that the ALJ failed to include the limitations imposed by Dr. Amanda Steen in her assessment dated August 18, 2010, and additionally failed to include the severe impairments recognized at step two of the sequential evaluation process.

In response, the Commissioner, relying on the case of *Bowling v. Shalala,* 36 F.3d 431 (5th Cir.1994), asserts that the hypothetical reasonably incorporated all plaintiff's disabilities recognized by the ALJ.  The Commissioner further asserts that plaintiff has shown no prejudice by the deficiency she alleges.

In *Bowling* the Fifth Circuit determined that:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to reasonably incorporate all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the questions), a determination of non-disability based on a such defective question cannot stand.

*Id.* at 436.      In this case, the ALJ asked the following questions of the VE:

> Q:      For the rest of my questions, I'd like you to assume a younger individual of the same work history and educational background as [plaintiff].  If I were to find that that individual from an exertional standpoint could engage in what is defined as light work activity and the individual can occasionally engage in gross and fine manipulation with each of the upper extremities, dominant and non-dominant, and could any of the prior work be performed?

> A:      No, sir.

In determining that plaintiff maintained the RFC to perform light work with occasional fine and gross manipulation in each hand, the ALJ weighed all the medical evidence and relied on the opinions of Dr. Amanda Steen and Dr. Joseph Michalik.  Tr. 19.  Dr. Steen opined that plaintiff should avoiding activities that require repetitive forceful gripping or twisting of the wrist and should try to avoid prolonged repetitive activities using the hands in general.  She determined that plaintiff was not limited in manual skills of the hands but should avoid the use of tools or utensils that vibrate and should avoid forceful pushing or pulling.  Tr. 257.  Dr. Michalik found plaintiff was capable of occasionally lifting twenty pounds, frequently lifting ten pounds, with no other limitations on plaintiff's ability to push and pull.  He also found no manipulative limitations.  Tr. 57-58.

Light work is defined as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §404.1567(b).

Plaintiff contends that the ALJ's question was defective because it failed to include the limitations of "forceful gripping and twisting of the wrists."  Doc. 16, p. 7.  Here, the ALJ did not find plaintiff capable of performing a full range of light work.  Instead, he imposed the limitation of "occasional fine and gross manipulation in each hand."  We find that this limitation necessarily takes into account Dr. Steen's restrictions and that the question reasonably incorporated all disabilities of the claimant recognized by the ALJ.  We further note that plaintiff was represented by an attorney at the hearing who was able to, and in fact did, cross examine the

VE concerning any defects in the hypothetical question.  Tr. 47-49.  Here, the hypothetical that the ALJ posed to the VE faithfully incorporated all of the limitations recognized in his RFC assessment, which we find is supported by substantial evidence.  *See Bowling, id.*

Plaintiff next claims that the hypothetical question was defective because the ALJ failed to include the severe limitations he found at step two of the sequential evaluation.  Specifically, plaintiff claims that the ALJ should have included the severe impairments of bilateral carpal tunnel syndrome and disorders of the knee and back in his question.

The second step of the sequential evaluation determines whether an impairment or combination of impairments is severe.  *See* 20 C.F.R. § 416.920.  Whether the impairments are "severe" is a separate and distinct step from assessing RFC, which is expressed as work-related functions.  *See id.*, 20 C.F.R. § 416.945.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions.  *Fields v. Bowen,* 805 F.2d 1168, 1170 (5th Cir.1986).  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995), (citing *Fields*, 805 F.2d at 1170).

We find that the hypothetical the ALJ asked in this case reasonably included all of plaintiff's limitations and was correctly phrased in terms that the VE could properly respond to.  The RFC of light work with certain limitations reasonably incorporated all of plaintiff's limitations, including her severe impairments.  Thus, we find the ALJ's hypothetical to be free from error.

### 4.   Did the VE provide defective step five testimony?

Lastly, plaintiff argues that the testimony of the VE was defective because two of the three jobs he described plaintiff capable of performing, that of gate guard and guide, are considered "semi-skilled."   Plaintiff asserts that since the ALJ found no transferable skills [Tr.19], she is considered "unskilled" and the testimony of the VE should be disregarded.[8]

The Commissioner asserts that even if the VE listed two jobs that are considered "semi-skilled," the third job he described, that of an usher, is considered "unskilled" and thus the ALJ was entitled to rely on his testimony.   We agree.

The VE testified that plaintiff was capable of performing the job of an usher.   Tr. 47.   He stated that the number of jobs available in the State of Louisiana was approximately 400 and in the national economy approximately 53,000.   *Id.*

To the extent plaintiff contends the ALJ improperly determined that she could perform other jobs existing in significant number in the economy, we find the ALJ properly relied upon the testimony of the VE that established that such work was available and that plaintiff could perform it. *See Morris v. Bowen,* 864 F.2d 333, 335-36 (5th Cir.1988)(ALJ may rely upon testimony of vocational expert "in order to determine the nature of [a claimant's] disability and the availability of jobs to someone with such a disability").

### V.
### CONCLUSION

Based on the foregoing, we find substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff is not disabled.   It is therefore RECOMMENDED that the ALJ's decision be AFFIRMED and this matter be DISMISSED with prejudice.

---

[8] The court notes that plaintiff, represented by counsel who cross examined the VE, never questioned the VE's testimony regarding plaintiff's ability to perform "semi-skilled" work.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE this 30th  day of September, 2013.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE